IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| STEVEN W. GRIGG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 08-1402-MO |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | OPINION AND ORDER |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

MOSMAN, J.,

Plaintiff Steven Grigg challenges the Commissioner's decision denying his applications for

disability insurance benefits and supplemental security income payments under Titles II and XVI of

the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the

Commissioner's decision.

Mr. Grigg alleged disability beginning August 13, 2004, due to lower back pain resulting

from a work injury. Admin. R. 70, 80. The administrative law judge ("ALJ") applied the regulatory

decision-making process for disability claims under the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  The ALJ found Mr. Grigg's ability to work adversely affected by degenerative disc disease with lumbar radiculopathy.  Admin. R. 22.  He found Mr. Grigg did not retain the functional capacity to perform the work activities required in his past work, but could perform other occupations existing in the national economy.  He concluded Mr. Grigg was not disabled within the meaning of the Social Security Act.  *Id.* at 25-26.

The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Mr. Grigg contends the ALJ erred in determining that his impairments were not medically equivalent to a presumptively disabling condition in 20 C.F.R. Part 404, Subpart P, Appendix I ("Listing of Impairments").  Alternatively, Mr. Grigg contends the ALJ elicited testimony from the vocational expert ("VE") based on assumptions that did not accurately reflect his functional limitations.  Mr. Grigg argues these errors undermined the ALJ's determination that he retains the ability to work.

## I.    Listing of Impairments

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity.  If the medical evidence establishes that a claimant suffers from such a condition, the claimant will be  conclusively presumed to be disabled at step three of the regulatory decision-making procedure.  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(d), 416.920(d).

The criteria for each presumptively disabling condition are enumerated in the Listing of Impairments.  The claimant must produce medical evidence establishing the symptoms, signs and

laboratory findings specified for the listed impairment.  Social Security Ruling ("SSR") 86-8, 1986 WL 68636, *3.  Mr. Grigg contends the ALJ improperly rejected medical evidence provided by Richard Gingrich, M.D., showing that his condition satisfied the criteria for Listing 1.04A.  He challenges the Appeals Council's determination that post-hearing evidence provided by Jordi Kellogg, M.D., was not material to the question whether his condition was medically equivalent to Listing 1.04A.  Mr. Grigg contends the ALJ improperly discredited subjective statements and failed to consider the combined effect of all his impairments in his step-three analysis.

Listing 1.04A involves disorders of the spine resulting in compromise of a nerve root or the spinal cord.  It requires evidence of nerve root or spinal cord compression associated with neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with muscle weakness or muscle weakness with sensory or reflex loss), and positive straight leg raising tests in sitting and supine positions.  Listing of Impairments § 1.04A.

The ALJ found Mr. Grigg failed to prove motor loss.  Admin. R. 23.  In June 2005, Kim Webster, M.D., found Mr. Grigg had good muscle bulk, tone, and strength in the upper and lower extremities without obvious weakness or atrophy.  Measurement revealed that Mr. Grigg's right calf was smaller than the left, but Dr. Webster found no associated muscle weakness.  *Id.* at 165-66.  On October 8, 2007, Dr. Gingrich also indicated Mr. Grigg had "no muscle weakness" in the motor portion of his physical examination.  *Id.* at 225.  In his post-hearing examination, Dr. Kellogg also found Mr. Grigg demonstrated intact motor strength in the lower extremities.  *Id.* at 235.  Mr. Grigg has identified no contrary findings supporting the motor loss required to meet Listing 1.04A.

The ALJ found no evidence of sensory or reflex loss.  *Id.* at 23.  This finding is not entirely accurate with respect to sensation, because treating sources noted diminished sensation in the right

foot. *Id.* at 190, 225. However, to meet the listing criteria, sensory loss must be associated with muscle weakness and there is no finding in the medical evidence that satisfies this requirement. Listing of Impairments, § 1.04A. Whether Mr. Grigg demonstrated loss of sensation is immaterial in the absence of the remaining criteria. The harmless error rule therefore applies. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

The ALJ found Mr. Grigg did not produce sufficient evidence of nerve root or spinal canal compression. Admin. R. 23. This conclusion is supported by the diagnostic imaging in the case record. In August 2004 at the alleged onset of disability, an MRI of Mr. Grigg's lumbar spine showed broad based posterior disc bulging with minimal indentation, but no impingement of the central canal or foraminal narrowing. *Id.* at 156. These findings were unchanged from an MRI in July 2003, long before Mr. Grigg allegedly became disabled. *Id.* In August 2007, another MRI study showed mild degenerative disc disease without canal stenosis. There was evidence that facet degeneration was causing foraminal narrowing at L4-5 and L5-S1, but the MRI report did not indicate compression of the nerve root or even questionable contact with the nerve root at either level. *Id.* at 192-93. Mr. Grigg cites medical authority indicating that foraminal narrowing can and often does result in nerve root compression. In this case, however, the MRI report did not indicate that result. Accordingly, the ALJ's conclusion that Mr. Grigg failed to show nerve root compromise is a rational interpretation of the medical evidence and must be upheld. *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

Dr. Kellogg later concluded that diagnostic imaging did indicate impingement of the nerve root at L4. Admin. R. 236. The ALJ did not have Dr. Kellogg's findings before him because they

were not submitted until Mr. Grigg sought review from the Appeals Council. The Appeals Council's evaluation of that evidence is addressed more fully later in this opinion.

The ALJ noted that Mr. Grigg did not appear to have limitations preventing him from ambulating effectively. Admin. R. 23. This is one of the criteria under paragraph C of Listing 1.04 and is not required to demonstrate equivalence through paragraph A of Listing 1.04. It is a useful point of reference, however, because it indicates the severity of functional limitation contemplated by the listing. The inability to ambulate effectively means having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the function of both upper extremities. Listing of Impairments § 1.00B. There are no findings in the medical evidence or the record as a whole showing this extreme loss of function. Dr. Webster observed that Mr. Grigg moved around relatively easily and opined that he could walk up to 6 hours in a work day. Admin. R. 164, 166. Mr. Grigg sometimes uses a cane, but conceded that it had not been prescribed by treating sources and that he can ambulate without it. *Id.* at 260-61. He does not requires a device which limits the use of both hands and he is independent in performing his activities of daily living. Accordingly, the ALJ's conclusion that Mr. Grigg has the ability to ambulate effectively and independently is supported by substantial evidence.

Mr. Grigg relies on the findings and opinion of Dr. Gingrich who began treating him on October 8, 2007, less than two months before his disability hearing. *Id.* at 225. Mr. Grigg complained of pain in the lower back with an onset of June 13, 2007, resulting from heavy exertion at work. *Id.* An MRI report showed facet disease with a disc bulge at L4-5. On physical examination, Mr. Grigg had limited straight leg raising on the right and diminished sensation in the right foot, but Dr. Gingrich found no muscle weakness. *Id.* On November 19, 2007, Mr. Grigg said

his pain had not improved with rest.  Dr. Gingrich believed Mr. Grigg's symptoms suggested nerve root pressure.  *Id.* at 224.  On November 26, 2007, Dr. Gingrich completed a questionnaire prepared by Mr. Grigg's attorneys.  He indicated diagnoses of low back strain, facet disease, and a disc bulge at L4-5, with moderate to severe foraminal narrowing. *Id.* at 217.  He indicated Mr. Grigg's symptoms limited his ability to lift, walk, and sit, made it necessary for him to lie down periodically during the day, and would cause him to have poor attendance at any job. *Id.* at 218-21.  Dr. Gingrich wrote "yes" next to the regulatory description of the criteria for Listing 1.04A.  *Id.* at 219.

Dr. Gingrich's findings do not establish the criteria necessary to show equivalence with Listing 1.04A.  In particular, Dr. Gingrich expressly excluded muscle weakness, a finding necessary to establish the required motor loss.  Nor does Dr. Gingrich's notation of "yes" next to the criteria suffice to establish the criteria.  Medical equivalence with the listing criteria must be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  SSR 86-8, 1986 WL 68636, *4.  Dr. Gingrich's cursory notation does not meet this standard.  Accordingly, the ALJ's determination that Dr. Gingrich's findings failed to establish that Mr. Grigg's condition is equivalent to Listing 1.04A is supported by substantial evidence and free of legal error.

Dr. Kellogg examined Mr. Grigg in December 2007, after the ALJ had conducted the hearing and closed the evidence.  Admin. R. 235-36.  Dr. Kellogg found the most recent MRI of the lumbar spine demonstrated facet disease with foraminal narrowing resulting in nerve root compromise at L4.  In the neurological portion of his physical examination, Dr. Kellogg noted that Mr. Grigg demonstrated intact motor strength in the lower extremities and was able to heel and toe walk without difficulty.  *Id.*  Dr. Kellogg indicated Mr. Grigg could be treated surgically with a

decompression and fusion procedure, but recommended a more conservative approach with epidural injections which had worked in the past. *Id.* at 236. In April 2008, Dr. Kellogg repeated this recommendation. *Id.* at 234. In July 2008, Mr. Grigg had received benefit but incomplete relief from a course of epidural injections, and told Dr. Kellogg he wished to proceed with surgery. Dr. Kellogg ordered new diagnostic images to assess the surgical options. *Id.* at 233. This was the extent of the medical evidence when Mr. Grigg sought review from the Appeals Council on August 4, 2008. *Id.* at 227.

When a claimant presents new evidence, the Appeals Council must consider the additional evidence if it is material and relates to the period on or before the date of the ALJ's decision. The Appeals Council then evaluates the entire record, including the new evidence submitted, and will review the case if it finds the ALJ's action, finding, or conclusion is contrary to the weight of the evidence in the record including the newly submitted material. 20 C.F.R. §§ 404.970(b), 416.1470(b). Accordingly, where a claimant seeks review based on evidence not presented to the ALJ, the Appeals Council must provide such review when the submitted evidence is new, material, and relates to the period on or before the date of the ALJ's decision. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). The Appeals Council agreed that the evidence from Dr. Kellogg was new evidence, but found it was not material. Admin. R. 6.

New evidence is sufficiently material to require a remand only if there is a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's decision if it had been before the ALJ. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984). Dr. Kellogg did not find the neurological deficits required to satisfy Listing 1.04A because he found Mr. Grigg had no motor loss

in the lower extremities. Admin. R. 235. Mr. Grigg failed to raise a reasonable possibility that the ALJ would have reached a different outcome if Dr. Kellogg's findings had been in the record before him because the new evidence is consistent with the ALJ's findings and conclusion that the medical evidence does not satisfy the criteria for Listing 1.04A.

Mr. Grigg argues the ALJ erred by discounting his subjective statements and failing to consider the combined effect of all of his impairments in determining whether his condition satisfied Listing 1.04A. These arguments fail because Mr. Grigg does not identify subjective statements that would establish the criteria for Listing 1.04A, does not identify other impairments in addition to his back condition, and does not offer a theory as to how additional impairments combine to satisfy the criteria for Listing 1.04A. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

## II.    Residual Functional Capacity

Mr. Grigg challenges the assumptions used by the ALJ to elicit testimony from the VE. He contends the ALJ arrived at an erroneous residual functional capacity assessment ("RFC") by failing to credit his subjective statements about his symptoms and by discounting Dr. Gingrich's opinion about his functional limitations.

### A.    Subjective Testimony

Mr. Grigg testified that he injured his back on August 13, 2004, while pulling a heavy weight at work in a window production plant. Admin. R. 251. He had constant back pain and numbness down his right leg and was unable to continue working. *Id.* at 253. In May 2006, Mr. Grigg began working at a new occupation in which he was required to move heavy saw blades. After one and a half months, his pain returned and he stopped working again. *Id.* In December 2006, Mr. Grigg began working as a printing press stacker through a temporary staffing agency. In April 2007, he

was hired permanently and his job duties changed so that he was required to perform tasks demanding great physical exertion, such as moving heavy rolls of paper.  In July 2007, his back pain and leg numbness returned and he stopped working again.  *Id.* at 254-56.

Mr. Grigg testified that he can sit and stand for about 30 minutes at a time and walk about one block.  *Id.* at 261.  He lies down during the day and does little housework; he must rest for 30 minutes after 40 minutes of activity.  *Id.* at 261-62.  His right shoulder hurts when he reaches up. *Id.* at 260.   He spends a typical day watching television, milling around the house, and using a computer.  *Id.* at 264.

The ALJ accepted that Mr. Grigg could no longer perform work requiring heavy lifting.  He found Mr. Grigg restricted to work requiring medium exertion with no more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, or lifting above shoulder level with the right arm.  *Id.* at 23.  He found Mr. Grigg could not sit, stand, or walk more than a total of 6 hours in an 8-hour day and had to be permitted to sit or stand as needed to relieve pain.  *Id.*  The ALJ did not accept Mr. Grigg's assertions of functional limitations in excess of these.  *Id.* at 24.

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis.  The first stage is a threshold test in which the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  If the claimant surmounts this threshold, the ALJ must proceed to the second stage, where the ALJ may discredit the claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing

so.  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen*, 80 F.3d at 1283.

Here the ALJ found that Mr. Grigg's degenerative disc disease and lumbar radiculopathy could cause some degree of the symptoms he claimed.  *Id.* at 24.  The ALJ proceeded to the second stage and found Mr. Grigg's statements about the intensity, persistence, and limiting effects of his symptoms not credible to the extent they asserted functional limitations in excess of the residual functional capacity described above.  *Id.*  Thus, the ALJ did not credit Mr. Grigg's assertions that he needs to lie down during the day, must rest for 30 minutes after 40 minutes of activity, and cannot sustain full time employment.

In determining credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work history, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186 *5.  An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ considered these factors in his credibility analysis.  He found the objective medical evidence supported functional impairment, but appeared to indicate Mr. Grigg remained able to perform work if he avoided heavy exertion.  Admin. R. 24.  This conclusion logically flows from the objective medical findings at the alleged onset of disability.  Carlos Ceballos, M.D., began treating Mr. Grigg in March 2004, for myofascial back pain which he treated conservatively with medication and rest.  At his second visit, Mr. Grigg was having pain only with heavy lifting.  At the third visit, Mr. Grigg was completely asymptomatic and Dr. Ceballos released him to work with no

limitations except a temporary lifting restriction of 50 pounds. *Id.* at 160-62. At the alleged onset of disability in August 2004, Mr. Grigg complained to Dr. Ceballos of the same symptoms. *Id.* at 157-59. A new MRI was unchanged from a 2003 MRI done before Mr. Grigg allegedly became disabled. *Id.* at 156. Dr. Ceballos again recommended conservative treatment with a course of epidural steroid injections and a rest from his job, which involved heavy work. *Id.* at 156. Mr. Grigg did not seek treatment again until he strained his back doing heavy work in June 2007.

In June 2005, Dr. Webster performed a consultative evaluation and obtained essentially normal findings in most respects. Mr. Grigg moved somewhat stiffly and slowly, but relatively easily. *Id.* at 163-64. He had no pain with percussion of the lumbar spine or with axial loading, and straight leg raising tests were negative. *Id.* at 165. Mr. Grigg had good muscle bulk, tone, and strength in the upper and lower extremities. Dr. Webster noted a discrepancy in calf size which he attributed to atrophy on the right, supporting an organic basis for Mr. Grigg's lumbar pain. *Id.* at 166. Still, Dr. Webster opined Mr. Grigg could sit, stand, and walk up to about 6 hours each during a workday and did not need an assistive device. He proposed lifting and carrying limits of about 20 pounds occasionally and 10 pounds frequently, corresponding to the light range of exertion. *Id.* Dr. Webster's findings support the ALJ's conclusion that Mr. Grigg could sustain work on a regular basis without unscheduled breaks to rest or lie down during the day.

The ALJ noted that no physician except Dr. Gingrich had made findings or expressed the opinion that Mr. Grigg had to lie down during the day or required 30 minutes of rest after each 40 minute period of activity. *Id.* at 25. The progress notes and examination reports of the treating and examining sources include Mr. Grigg's subjective complaints. These do not reflect that Mr. Grigg reported the need for frequent breaks to rest or lie down. The absence of subjective complaints

reflecting these limitations supports an adverse inference as to the credibility of the claim that these were persistent significant symptoms.

The ALJ's conclusion that Mr. Grigg could work if he avoided heavy exertion also logically flowed from his parallel treatment and work histories. The medical records show Mr. Grigg required treatment after straining his back with heavy exertion at work in August 2004 and did not require treatment again until he strained his back with heavy exertion at work again in June 2007. Admin. R. 190, 195, 198, 202-04. The absence of treatment during periods when Mr. Grigg avoided heavy exertion supports an adverse inference as to the credibility of the claim that his symptoms would persist even without strenuous exertion. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

The ALJ found that Mr. Grigg's ability to work in 2006 and 2007 supported the conclusion that Mr. Grigg remained capable of working at less strenuous levels of exertion. *Id.* at 25. Mr. Grigg would not have been able to maintain that employment if he had required excessive breaks for rest or to lie down during the work day. Yet his employer elevated him to permanent full time status in April 2007. When Mr. Grigg stopped working, it was not because he needed excessive breaks or had poor attendance, but because of pain from heavy exertion. Mr. Grigg's ability to engage in activities inconsistent with the limitations claimed in his testimony supports an adverse inference as to his credibility. *Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997); *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992).

In addition, the ALJ pointed out that Mr. Grigg's treatment had been generally conservative, that his providers had not recommended surgery, and that Mr. Grigg had not pursued more aggressive treatment. Admin. R. 24. This conservative treatment history supports an adverse

inference as to the credibility of Mr. Grigg's subjective claim of debilitating symptoms.  *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007).

The ALJ pointed out that Mr. Grigg had not been entirely candid in his description of treatment recommendations.  *Id.* at 24.  Mr. Grigg testified his physicians recommended back surgery, and he had not pursued it solely due to lack of funds or insurance coverage. *Id*. at 252.  The progress notes of his physicians show that they did not recommend surgical intervention, but indicated that it might be a viable option at some point in the future.  *Id.* at 155, 190.  Instead, Mr. Grigg's physicians recommended conservative treatment with epidural injections and rest.  Mr. Grigg argues that Dr. Kellogg recommended surgery, but this does not appear to accurately reflect the record, either.  Dr. Kellogg indicated that surgery was an option he discussed with Mr. Grigg, but he recommended conservative treatment with epidural injections because both he and Mr. Grigg hoped to avoid surgery.  *Id.* at 234.  In any event, this discussion occurred in 2008, several months after Mr. Grigg testified that surgery had already been recommended.  The ALJ was entitled to draw an adverse inference as to credibility from Mr. Grigg's apparent lack of candor in this regard. *Smolen*, 80 F3d at 1284.

The ALJ's credibility determination is supported by inferences reasonably drawn from the record.  His decision provides an adequate basis for me to conclude that he did not discredit Mr. Grigg's subjective statements arbitrarily.   Accordingly, the credibility determination is upheld. *Orteza*, 50 F.3d at 750; *Batson*, 359 F.3d at 1193.

### B.    <u>Medical Source Statement</u>

Mr. Grigg contends the ALJ improperly rejected the questionnaire Dr. Gingrich submitted in November 2007 regarding his functional limitations.  On the questionnaire, Dr. Gingrich opined

Mr. Grigg's symptoms made it necessary for him to lie down periodically throughout the day to alleviate pain.  Admin. R. 218.  He indicated Mr. Grigg could lift up to 10 pounds and stand, walk, or sit less than a total of one hour per workday.  *Id.* at 219-20.  Dr. Gingrich opined Mr. Grigg would miss work more than twice per month, even if working in a sedentary occupation.  *Id.* at 221.  The ALJ gave Dr. Gingrich's opinion little weight.  *Id.* at 25.

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ found Dr. Gingrich's opinion of Mr. Grigg's functional limitations out of proportion to the findings of Drs. Ceballos and Webster.  Admin. R. 25.  As noted previously, Dr. Ceballos was Mr. Grigg's treating physician at the alleged onset of disability.  He found that Mr. Grigg's subjective complaints and the minimal objective findings, including diagnostic imaging, were unchanged from before Mr. Grigg's disability allegedly began.  Dr. Ceballos found no permanent work restrictions.  *Id.* at 156.

In June 2005, Dr. Webster obtained generally normal findings, as described previously.  Mr. Grigg had no pain with percussion or axial loading and his straight leg raising tests were negative. He had good muscle bulk, tone, and strength in both legs.  He had atrophy in the right calf which supported an organic basis for his symptoms, but he demonstrated no motor loss.  Dr. Webster opined Mr. Grigg retained the ability to sit, stand, and walk up to about 6 hours each during a workday.  Mr. Grigg did not require an assistive device and had a maximum lifting capability of about 20 pounds.  *Id.* at 164-66.  The ALJ rationally found Dr. Gingrich's opinion regarding

excessive rest breaks and the need to lie down during the day out of proportion with the findings of Drs. Ceballos and Webster.

The ALJ also noted the brief treatment relationship Dr. Gingrich had with Mr. Grigg at the time he completed the questionnaire. *Id.* at 25. Dr. Gingrich treated Mr. Grigg twice in two months before completing the questionnaire. *Id.* at 224-25, 237. At his initial examination, Dr. Gingrich found minimal tenderness at the sacro-iliac joint, a limited straight leg raise test on the right, decreased sensation in the right foot, but no motor loss due to muscle weakness. He recommended bed rest and muscle exercises. *Id.* at 225. At the second visit, Dr. Gingrich did not note objective findings, but recorded Mr. Grigg's subjective report of no improvement in his pain. *Id.* at 224. Dr. Gingrich's findings were minimal and did not explain the severe limitations in his opinion, which appear to be based on Mr. Grigg's subjective description of his limitations. By its nature, pain eludes objective measurement and must be assessed by subjective reports from the patient. Under such circumstances, a claimant's credibility is critically important. Here, the ALJ found Mr. Grigg's subjective statements regarding the limiting effects of his symptoms were not credible. A physician's opinion premised on unreliable subjective reports is also unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. Gingrich opined that Mr. Grigg's subjective complaints were reasonable, but the ALJ found they were refuted by his ability to sustain work from November 2006 until June 2007. In particular, the ALJ found Dr. Gingrich's opinion that Mr. Grigg would miss work frequently and require unscheduled rest breaks even if working a sedentary occupation was unsupportable given Mr. Grigg's work history during 2006 and 2007. *Id.* at 25.

15 - OPINION AND ORDER

In summary, the ALJ provided specific, legitimate reasons for discounting Dr. Gingrich's disability opinion. His reasons are supported by substantial evidence in the record indicating that Dr. Gingrich's opinion was inconsistent with the findings of other treating and examining sources, his involvement with the patient was relatively brief, and he relied on subjective reports that were refuted by Mr. Grigg's work activities. These findings are supported by a rational interpretation of the record as a whole and are upheld. *Andrews,* 53 F.3d at 1039-40; *Morgan,* 169 F.3d at 599.

### III.   Vocational Evidence

At step five of the decision-making process, the Commissioner must show that the claimant can perform work which exists in the national economy. *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. *Id.; Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Mr. Grigg contends the ALJ elicited testimony from the VE using hypothetical assumptions that did not accurately reflect his inability to sit, stand, or walk for six hours in a workday.

The Social Security Act places the burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant. 42 U.S.C. §§ 405(g), 423(d)(5); *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The ALJ considered all the evidence Mr. Grigg produced and elicited testimony from the VE based on the functional limitations supported by the record as a whole. The ALJ was not required to incorporate additional limitations based on evidence he properly discounted. *Batson*, 359 F.3d at 1197-98; *Osenbrock*, 240 F.3d at 1164-65. Mr. Grigg's objections to the ALJ's evaluation of the evidence cannot be sustained for the reasons already given.

The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports the claimant's assertion of additional limitations.  *Andrews*, 53 F.3d at 1039-40; *Morgan*, 169 F.3d at 599.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this __13th__ day of January, 2010.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge